HENRY, Circuit Judge,
concurring.
I fully concur in the majority opinion: Great Plains Correctional Facility has failed to provide any evidence that Mr. Gamble or Mr. Popejoy acted with the requisite “intent to cheat and defraud.” OKLA. Stat. tit. 21, § 1541.1. Mr. Gamble and Mr. Popejoy seem to have quite honestly, and I suggest, reasonably, believed that their disbursement requests were permissible under Okla. Stat. tit. 57, § 549(A)(5). As the panel acknowledges, “the inmates’ understanding that requesting disbursement from their mandatory savings for the costs of obtaining their transcripts was a legal request is justified under Oklahoma case precedent and legislative history.” Maj. Op. at 1030; see also Okla. Stat. tit. 28, § 31 (listing the charge for “[mjaking [a] copy of an instrument of record or on file” as an example of a “fee” to be collected by the district court); Cumbey v. State, 699 P.2d 1094, 1096 (Okla.1985) (denying inmates’ request to proceed IFP and directing “the Department of Corrections to release the sum of fifty ($50) dollars for the costs of filing this appeal; and the sum of thirty ($30) dollars ... for costs of assembling the record on appeal”) (emphasis added). After all, *1033 paying court costs is a good thing, as is reinforcing the reality that one must, by and large, pay one’s own way.
The lack of intent to cheat and defraud is further highlighted by the fact that prison officials could simply have rejected the inmates’ requests for disbursements to cover copying and transcript fees. Oklahoma Department of Corrections policy states that “[t]he appropriate staff will approve or disapprove the disbursement request and forward to [the] trust fund officer, or return to [the] inmate if not approved.” OP-120230(VII)(B)(1). The panel notes that “submitting a disapproved disbursement request is not an act that constitutes a rule violation under OP-060125.” Maj. Op. at 1027. I question why the staff did not simply reject the inmates’ disbursement requests rather than charging them with obtaining money under false pretenses.
Finally, I believe that the Great Plains Correctional Facility’s interpretation of the statute is simply wrong. I fail to see the harm in allowing prisoners to spend their funds on court costs and fees, whether they are associated with the filing of a case or the prosecution of it. It would make little sense to allow savings account monies to be used to file a case and then forbid their use to provide courts with materials useful in resolving that ease. Indeed, it is possible that interpretations this far off the mark could raise constitutional implications concerning access to the courts. But as Mr. Gamble and Mr. Popejoy did not adequately raise the constitutionality of this interpretation, and keeping in mind that “[i]t is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case,” Burton v. United States, 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905), I rest my decision with the majority on the clear lack of evidence of intent in these two cases.